## TALBOT S. DUFF, Respondent, v. OPHIE DUFF, Appellant.

### Kansas City Court of Appeals, May 15, 1911.

1. **EVIDENCE: Presumption of Death: Seven Years Absence from the State.** Where the question at issue was whether plaintiff could recover as the heir of his brother, the share of his father's estate that would be due his said brother, if the latter were alive, *held*, that section 6340, R. S. 1909 relating to the presumption of death after seven years absence from the state was not intended to abrogate the common law presumption of death after seven years unexplained absence abroad, but that the statutory and common law rules are alike in many respects.

2. ———: ———: **Not Conclusive.** To avail himself of the statutory presumption, plaintiff must show that the person whose death is in question resided in this state, and that he left the state, and did not return for seven successive years, which proof would not raise a conclusive, but, at most, a prima facie presumption of death.

3. ———: ———: **Leaving State.** The fact that the person whose death is in question left the state need not necessarily be established by direct and positive evidence. The proof must be clear and convincing, but it may consist entirely of circumstantial evidence.

4. ———: ———: **Time of Death.** There is no presumption whatever that the person whose death is in question died at any particular time within the seven years. Hence, the defendant's contention that it cannot be assumed that said person, who left

home when sixteen years old, remained unmarried and child-less at a period in his life when the desire to marry is strong-est, is untenable because based on the further presumption that the death of said person did not occur until he was twenty-three years old.

5. ———: **Change of Status: Burden of Proof.** Whether or not a person whose death was in question was married at any time before the seven-year period expired at the end of which the presumption of his death arose, was a fact to be proved, and the burden of showing a change of status (he, having left home unmarried) would be on the person relying on such change.

6. **PLEADING: Plea to Merits: Waiver of Other Defenses.** Where defendant pleads to the merits, he waives everything in the petition but two points, viz., that no cause of action is stated, and that the court has no jurisdiction over the subject-matter. Hence, the point that plaintiff is without legal capac-ity to sue was waived by defendant's failure to stand on her demurrer to the petition in which that objection was presented.

Appeal from Harrison Circuit Court.—*Hon. G. W. Wanamaker,* Judge.

AFFIRMED.

*A. S. Cumming* for appellant.

(1) Absence does not create an absolute presumption of death without proof that the absentee went from this state and did not return thereto for seven successive years. R. S. 1899, sec. 3144; Dickens v. Miller, 12 Mo. App. 411; Biegler v. Supreme Lodge, 57 Mo. App. 419. (2) Unless the case falls strictly within sec. 3144, R. S. 1899, the presumption of death from seven years absence is not absolute and the jury may take into consideration the facts and circumstances attending the departure, from which to determine whether or not there was an intention to return as bearing upon the question of probable death and should be so instructed. Biegler v. Supreme Lodge, 57 Mo. App. 419; Winter v. Supreme Lodge, 96 Mo. App. 16; Dickens v. Miller, 12 Mo. App. 411. (3) There is no presumption that a young man who may have died between the ages of sixteen and twenty-six years, died unmarried and without issue. Johnson v.

Johnson, 170 Mo. 54, and authorities there cited. (4) No person except the administrator can sue for and recover personal assets of a decedent. Woerner on Administration, sec. 200, p. 431. (5) The legal title to personal property passes to the administrator and not to the distributees. Woerner on Administration, sec. 199, p. 430; 2 Blackstone, 490 and 504; Bartlett v. Hyde, 3 Mo. 490; Crastin v. Baker, 8 Mo. 439; Leakey v. Maupin, 10 Mo. 373; State ex rel. v. Moore, 18 Mo. App. 410, and authorities there cited; Naylor v. Moffat, 29 Mo. 128. (6) The few cases in this state stating a different rule viz: McCrackin v. Caslin, 50 Mo. App. 85; McDowell v. Orphan's School, 87 Mo. App. 386, and Richardson v. Cole, 160 Mo. 372, will be noticed in the argument. (7) The circuit court was without jurisdiction to entertain this cause, it being within the exclusive jurisdiction of the probate court. Const. Mo., art. 6, sec. 34; R. S. 1899, sec. 1753; Green v. Tittman, 124 Mo. 378. (8) It is error to submit to the jury a question of fact upon which there was no evidence. Wilkerson v. Eilers, 114 Mo. 253; Paddock v. Somes, 102 Mo. 239. (9) Where verdict of jury is wholly unsupported by the evidence, it should be promptly set aside by the court. Paddock v. Somes, 102 Mo. 239; Jones v. Grossman, 59 Mo. App. 198; Roman v. Trading Co., 87 Mo. App. 192; Moore v. Hutchinson, 69 Mo. 429; Howard v. Coshow, 33 Mo. 118; Lewis v. Pallin, 48 Mo. App. 658. (10) Where the evidence introduced by plaintiff wholly fails to establish his right of action, it is the duty of the court to thereupon direct the jury to find a verdict for the defendant. Breen v. Cooperage Co., 50 Mo. App. 202; Smith v. Railroad, 37 Mo. 292; Baker v. Schneider, 85 Mo. App. 412; Epperson v. Tel. Co., 155 Mo. 346.

*J. C. Wilson, Garland Wilson* and *J. W. Peery* for respondent.

(1) The abstract of the record filed by appellant is fatally defective because it fails to show that a certified

copy of the judgment appealed from, and order granting the appeal, was ever filed in the court. For this reason alone without inquiry into the merits the judgment should be affirmed. Cooper W. & B. Co. v. Cornell, 131 Mo. App. 344; Harding v. Bedoll, 202 Mo. 625; Pennowfsky v. Coerver, 205 Mo. 135. (2) Under the law of this state the plaintiff, in the circumstances of this case, was entitled to maintain this suit without the intervention of an administrator of the estate of Leander F. Duff. McCracken v. McCaslin, 50 Mo. App. 85; McDowell v. Orphan School, 87 Mo. App. 386; Richardson v. Cole, 160 Mo. 372; State v. Thornton, 56 Mo. 325. The doctrine of the above cases was fully reviewed and approved by this court in a later case. Griesel v. Jones, 123 Mo. App. 45. And the same rule has been announced and declared in other jurisdictions. Hurt v. Fisher, 35 S. W. 1085 (Tenn.). (3) The defendant by filing an answer after the overruling of her demurrer waived the ground alleged in her demurrer that plaintiff had no legal capacity to sue, or that there was a defect of parties plaintiff. The question discussed in the preceding paragraph is clearly a question of the legal capacity of plaintiff to sue, or of a defect of parties plaintiff. The defendant raised this question by her demurrer, but the demurrer being overruled, she did not stand upon it, but answered over. In such case it is well settled that she waived the point. Hudson v. Cahoon, 193 Mo. 547; Billings v. Hirsch Co., 86 Mo. App. 228; Rogers v. Insurance Co., 132 Mo. App. 275. (4) There can be no question that instruction No. 1, for the plaintiff states the law, if it is justified by the evidence. Carpenter v. Sup. Coun., 79 Mo. App. 597; Winter v. Sup. Lodge, 96 Mo. App. 1; S. C., 101 Mo. App. 550; Bradley v. Mod. Wood., 124 S. W. 69; Gilroy v. Bradey, 195 Mo. 205; Chapman v. Kullman, 191 Mo. 245. In this connection it may be observed that instruction No. 2, offered by defendant was erroneous, because it told the jury peremptorily to find for the defendant if they found the facts therein recited;

whereas, such facts were only to be taken into consideration by the jury, in determining whether the presumption was rebutted, even if his contention as to the law be correct. Again this instruction was clearly erroneous because it was argumentative, and a commentary upon the evidence.

JOHNSON, J.—Plaintiff commenced this suit in the circuit court of Harrison county in January, 1909, to recover as the heir of his brother, Leander F. Duff, the share of their father's estate that would be due his said brother if he were alive.

The petition alleges that Leander died in May, 1906, leaving plaintiff and their mother as his sole heirs, and that the mother assigned her interest in his estate to plaintiff before this suit was brought. Defendant, who is the widow of the father of plaintiff and the administratrix of his estate, denies that plaintiff's brother, Leander, is dead, and the principal issue in the case is whether or not Leander, before the institution of this action, had died without issue and without creditors. Defendant demurred to the petition on three grounds, viz.:

"1st. The petition shows on its face that this court has no jurisdiction of the subject-matter of the suit.

"2d. The petition shows on its face that plaintiff has no legal capacity to maintain the suit.

"3d. The petition fails to state facts sufficient to constitute a cause of action."

The demurrer was overruled and defendant answered admitting that she is the administratrix of the estate of plaintiff's father, appointed by the probate court of Wright county and that the estate in her hands is now ready for distribution, and alleging "that at the time of the final settlement of said estate, it was ordered and adjudged by the probate court of Wright county, Missouri, that the personal property should be distributed among the plaintiff, this defendant and said Leander F. Duff. That it was found and adjudged by

the said probate court that the said Leander F. Duff was entitled to twenty-eight hundred and ninety-five dollars, and that the probate court of Wright county Missouri, adjudged and ordered this defendant as administratrix to pay said sum to the said Leander F. Duff.

Defendant further answering, denies each and every other allegation in plaintiff's first amended petition contained.

Defendant furthed answering states that at all times since making final settlement as administratrix as aforesaid, she has been ready, willing and anxious to pay to said Leander F. Duff his said distributive share in the estate of the said James F. Duff, and that she now holds said fund subject to the orders of the probate court of Wright county, Missouri, in accordance with the law in such cases made and provided."

There is no controversy over the facts of the case. Plaintiff and his brother Leander were the only children of James F. Duff and his wife, Mary, who lived at Princeton, Missouri, a city close to the Iowa line. Husband and wife separated, were divorced and in 1895, James F. Duff married his second wife. They lived together in Princeton until 1902 and Leander lived with them. They were divorced and in 1902, Mr. Duff married the defendant and removed to Wright county where he lived until his death in April, 1906. After being divorced the mother of plaintiff and Leander married a Mr. Wasson and lived at Lineville, Iowa, a city sixteen miles north of Princeton. In September, 1899, Leander, then sixteen years old, disappeared from his home in Princeton and has not been heard from since. Sometimes he and his father quarreled and on such occasions he would talk to his stepmother about leaving home and enlisting in the army for service in the Philippine Islands. One night after he and his father had quarreled and parted in anger, he retired to his room and during the night, secretly left home, never to return. He did not enlist in the army and there is no evidence that he

went to his mother. Mr. Duff immediately began a most thorough and persistent search for his son, which took him to many cities. He advertised his loss in a great many newspapers, in some of which he caused the boy's picture to be published, and offered a reward for information of his whereabouts. After the death of Mr. Duff his widow continued the search. She caused advertisements containing a description of the young man and the information that a valuable estate awaited him, to be inserted in newspapers all over the country from New York to San Francisco. She invoked the aid of the police departments of many cities, of detective agencies and of the War Department at Washington. None of these persistent efforts which covered a period of eight years or more produced the slightest result. The obliteration of all trace of the boy after he left home was as complete as though the earth had swallowed him.

The court overruled the demurrer to the evidence offered by defendant and at the request of plaintiff instructed the jury:

"I. If the jury believe from the evidence that Leander F. Duff while residing in this state went therefrom and has not returned to this state for seven successive years—and that during all that time and up to the time of this trial he has not been heard from by any member of his family, or any other person, then he is presumed at and after the expiration of said seven years absence to be dead—and the jury are at liberty to infer the fact of his death from such absence for seven successive years—and from the fact that he has not been heard from during that time.

"II. If the jury find from the evidence as defined in the preceding instruction, that Leander F. Duff is dead, and that he left surviving him no wife, issue or their descendants and no other heirs except the plaintiff Talbot S. Duff, his brother, and Mary A. Wasson, his mother, and that said Mary A. Wasson has assigned to

the plaintiff all of her interest in the estate of James F. Duff, deceased, then the jury will find for the plaintiff in the sum of $2895."

The court refused to give the following instruction offered by defendant: "The court instructs the jury that while seven years continued absence of a person without such person having been heard of or from by those with whom he would naturally be expected to have communicated raises a presumption of the death of such absentee, still this presumption is not an absolute presumption where the circumstances of the absentee's departure were such as would indicate an intention not to return or communicate with those with whom he might reasonably be expected to have communicated, and if you find and believe from the evidence in this case that Leander F. Duff left his home under such circumstances as would cause you to believe that he had no intention of returning or communicating with those with whom he would reasonably have been expected to communicate, then there is no presumption of his death in this case and your verdict must be for defendant."

The jury returned a verdict for plaintiff and defendant appealed from a judgment rendered on that verdict. What we shall say in the discussion of the demurrer to the evidence will dispose of the case.

The statute (sec. 6340, Rev. Stat. 1909) provides: "If any person who shall have resided in this state go from and do not return to this state for seven successive years, he shall be presumed to be dead in any case wherein his death shall come in question, unless proof be made that he was alive within that time."

This statute was not intended to abrogate the common law presumption of death after an unexplained absence abroad of seven years. The statutory and common law rules are alike in many respects but each has a special field of its own. [Dickens v. Miller, 12 Mo. App. 408; Biegler v. Supreme Council, 57 Mo. App. 419; Winter v. Supreme Lodge, 96 Mo. App. 1.]

In either case the presumption is not absolute but may be overturned by proof or even by counter presumptions. It is a mixed presumption of law and fact, indeed, a mere rule of logic, the force and applicability of which is largely governed by the circumstances of the particular case. It is born of a necessity created by the usual lack of a better character of proof in the class of cases to which it is designed to apply and in that respect is analogous to rules permitting the use of hearsay evidence in instances where, as a general rule, no other and better kind of evidence is existent.

In the instructions asked by plaintiff and given by the court the statutory presumption only is invoked and since we find ground in the evidence on which that presumption may stand we shall not consider the peculiar features of the common law rule. To avail himself of the statutory presumption, plaintiff was required to show that Leander resided in this state, and that he left the state and did not return for seven successive years. Such proof, as we have said, would not raise a conclusive, but, at most, a prima facie presumption of death which could be overcome by countervailing evidence. In other words, such proof, unsupported and uncontradicted, would support an inference that death was the cause of the prolonged absence of Leander. We find the peculiar circumstances of the case, instead of destroying the presumption of death, tend to support it and, therefore, that the issue of whether the young man was dead or alive at the commencement of the suit was one of fact for the jury to solve.

Counsel for defendant argue that there is no evidence that Leander left the state. The St. Louis Court of Appeals hold in Bradley v. Modern Woodmen, 124 S. W. 69, 146 Mo. App. 428, that the statutory presumption of death from seven years absence from the state does not arise until it is conclusively shown that decedent left the state, but that does not mean that the fact must be established by direct and positive evidence.

The proof must be clear and convincing but it may consist entirely of circumstantial evidence. Much stress is laid by defendant on the fact that Leander left an uncongenial home secretly and in anger and with the evident intention never to return or to communicate with those left behind. We do not entertain the view that the anger of the young man towards his father was of a lasting nature. In adolescence boys sometimes are prone to resist paternal authority and to question the infallibility of paternal wisdom and judgment, and fathers are apt to exhibit annoyance and irritability over the waning of their influence. Such manifestations are natural and generally they and the feelings they engender are most ephemeral. The spirit of manhood had turned the young man's mind to thoughts of war and we think he was actuated more by a thirst for adventure and a desire to see the world than by any lasting feeling against his father. That there was no mutual animosity between father and son is demonstrated conclusively by the extraordinary affection and devotion of the father exhibited in the efforts he continued to put forth, during the remainder of his life, to find his son. The object of such efforts seems to have become the dominant purpose of his life and the zeal of his widow in the pursuit of that object after his death indicates that he had bequeathed it to her as a heritage.

The belief that the young man is alive and was in this state during a period of more than eight years while such a quest was being pursued seems unreasonable and necessarily must rest on the further belief—entirely unsupported by evidence—that the anger of the son towards his father was indestructible, malignant and unsoftened by the death of its object. We say this belief necessarily would have to be indulged since it is unbelievable that Leander could have remained in the state and have been in ignorance of the search being made for him. But had he been so callous as to secretly regard his father's manifest agony of mind with com-

placent indifference, there is no reason to suppose that a person of such abnormal cast of mind would be wholly indifferent to the small fortune left him by his father. On the contrary one would expect him to appear and claim his patrimony. In the absence of proof to the contrary we must regard Leander as a normal person possessing common human virtues and frailties and as not being deficient in filial affection or in desire of gain. Thus regarding him, we say that the inference that he left the state shortly after forsaking the parental home and did not return is not only reasonable but very persuasive.

But it is argued by defendant that the presumption includes the further presumption that the death of the young man did not occur until the end of the seven years period and, therefore, we cannot assume that he remained unmarried and childless during a period in his life when the desire to marry is strongest. Lawson, in his work on The Law of Presumptive Evidence, p. 248, states as a rule that "One who is proved to have been unmarried when last known to be alive will be presumed to have died childless but it is otherwise when he or she was married when last known to be alive."

The Supreme Court in Johnson v. Johnson, 170 Mo. 34, do not recognize such rule but declare the opposite rule that "there is no presumption of law of fact that a man or woman is single, nor any presumption to the contrary." Judge SHERWOOD says: "At best it can only be said that there is no presumption at all on the subject; although ordinarily a condition, whether it be one of insolvency, insanity of a chronic nature (State v. Lowe, 93 Mo. 547) or what not, once shown to exist, is presumed to have changed. But here was a young man last heard of at a time when he naturally would be unmarried, but approaching that period of life at which the greater number of men do marry, if at all, and no better reason is apparent for presuming a man unmar-

ried until his death, merely because that was his condition in his early adolescence, than for the presumption that he spent his life in sin because, according to the creeds of some religious denominations, he was born under the cloud of original sin."

We perceive no occasion for resorting to presumption. Defendant's premise is unsound that Leander is presumed not to have died until seven years had elapsed from the date he left the state. There is no presumption that he died at any particular time within the seven years. [Chapman v. Kullman, 191 Mo. l. c. 246; Winter v. Superior Lodge, 96 Mo. App. 1.] Whether or not the young man was married was a fact to be proved and the burden of showing a change of status is on the party relying on such change. From the fact that in the face of immediate, persistent and intelligent efforts to find Leander, no trace of him even was discovered, the inference is very strong that he met an early death and a nameless grave even before he had an opportunity to enlist in the army. There are no facts or circumstances on which to rest a reasonable conclusion that he married and was survived by issue.

The point that plaintiff is without legal capacity to sue was waived by defendant's failure to stand on her demurrer to the petition in which that objection was presented. The rule is well settled that if a defendant pleads to the merits he waives everything in the petition but two points, viz., that no cause of action is stated, and that the court has no jurisdiction over the subject-matter. [Hudson v. Cahoon, 193 Mo. l. c. 556, et seq., and cases cited.]

The demurrer to the evidence was properly overruled. The instructions fairly presented the case to the jury and there is no prejudicial error in the record.

The judgment is affirmed. All concur.