ANNIE CARTER, Respondent, v. METROPOLITAN LIFE INSURANCE COMPANY OF NEW YORK, Appellant.

St. Louis Court of Appeals.    Submitted on Briefs May 3, 1911.
Opinion Filed June 6, 1911.

1. DEATH: Presumption: Seven Years' Absence: Statute. Under section 6340, Revised Statutes 1909, a presumption of death arises only where it is shown that the absent person was a resident of this state, that he departed from this state and thereafter continued absent from this state for seven successive years, and there is no showing that he was alive within that time.

Carter v. Life Insurance Co.

2. ———: ———: ———: **Common Law.** A statement made by a person when leaving home "that he was going west and did not intend to return home" would, at common law, be an explained absence—an absence for adequate cause.

3. ———: ———: ———: **"Going West."** The word "west" is a very indefinite word, in common usage; so that, where one, at the time he left home, stated he was "going west," a presumption did not necessarily arise that he meant to convey the idea he was going outside of this state.

4. **LIFE INSURANCE: Death: Presumption: Seven Years' Absence: Statute: Sufficiency of Evidence.** In an action on a life insurance policy, where plaintiff, for proof of death, relied on the presumption of death, under section 6340, Revised Statutes 1909, proof that insured, who was plaintiff's husband and had lived with her in St. Louis, left her more than seven years before the institution of the suit, and at the time he left stated he was "going west," and that, after diligent search, his whereabouts had not been discovered, which proof did not show that, in fact, he ever did leave this state nor that ne was ever seen dead or alive outside of this state, was insufficient to raise a presumption of death from absence, under said statute.

Appeal from St. Louis City Circuit Court. —*Hon. W. B. Homer,* Judge.

REVERSED AND REMANDED.

*Nathan Frank* and *Max W. Oliver* for appellant.

(1) Plaintiff's cause of action was based squarely on section 6340, Revised Statutes of 1909. In order to bring herself within the terms of this statute, it was incumbent on plaintiff to show that Dominic Carter left the State of Missouri on or after October 12, 1900. As there was no evidence to this effect and as she was not entitled to recover on any other theory, the finding and judgment should be for defendant as prayed. Biegler v. Legion of Honor, 57 Mo. App. 419; Bradley v. Modern Woodmen, 146 Mo. App. 428. (2) The statement of Dominic Carter at the time of his disappearance that he intended to go west, or to California,

although admissible as part of the *res gestae*, does not prove or tend to prove that he went west or that he actually left the State of Missouri. The presumption of death under the statute, arises only when it is conceded or conclusively shown that the absentee had left this state and had not returned for seven successive years. Winter v. Supreme Lodge, K. of P., 96 Mo. App. 1; Bradley v. Modern Woodmen, 146 Mo. App. 428.

*Henry Rowe* and *Thos. J. Rowe, Jr.,* for respondent.

The plaintiff in this action relies solely on the presumption of death created by the statute and at the trial of this cause produced the necessary unrebutted evidence to establish that presumption. 1st, evidence proving that Dominic Carter was a resident of this State in the year 1900; 2d, evidence proving that Dominic Carter departed from this State in the year 1900; 3d, evidence proving that Dominic Carter did not return to this State for seven or more successive years thereafter. This proof under the express terms of the statute established the presumption of death to rebut which it devolved upon defendant to prove that Dominic Carter was alive within that time, which defendant failed to do. Biegler v. Sup. Council, 57 Mo. App. 419; Dickens v. Miller, 12 Mo. App. 408.

REYNOLDS, P. J.—This action was originally instituted before a justice of the peace, by filing a statement and the policy involved. After averring the incorporation of defendant, the statement sets out that in consideration of the payment of the premium mentioned in the schedule in the policy, defendant contracted and agreed to pay the full or maximum amount of $162, and executed and delivered the policy filed, which is dated February 24, 1896. After averring that all premiums due upon the policy had been duly paid

Carter v. Life Insurance Co.

and conditions and provisions of the policy complied with and that plaintiff is the wife of Dominic Carter, the insured, having been married to him July 7, 1895, it is averred that Dominic Carter resided in this state from and after that date and until October 12, 1900, "and did go from and did not return for seven successive years, and has remained away and that she nor anyone else, to her knowledge, has heard from him, after diligent search for him, and that she now thoroughly believes that he, the said Dominic Carter, is dead." Plaintiff prays judgment for the amount of the policy, $162, and for costs.

Defendant appealed from an adverse judgment by the justice to the circuit court. In the latter, the cause was tried by the court, a jury being waived.

The "proof of loss," which had been submitted by plaintiff to defendant, was offered as notice to the company of the claim. It consisted of an affidavit setting out the facts substantially as made by plaintiff in her statement filed before the justice and on which the case was tried in the circuit court, defendant making no written plea. The only matter in the affidavit which was not in the statement is, that the occupation of the husband was that of a hod carrier and that plaintiff had not seen or heard from him since October 12, 1900.

The policy introduced in evidence is in the form usual to industrial companies, and provides that upon receipt of proofs of the death of the insured Dominic Carter, made in the manner and to the extent and upon the blanks required and upon surrender of the policy, etc., that defendant would pay the amount stipulated in the schedule, to the executor or administrator, husband or wife or any relative by blood or lawful beneficiary of the insured, and that the production of the receipt signed by either of them shall be conclusive evidence that all claims under the policy have been satisfied. The maximum amount named is $162, one-

fourth payable if death occurs within six calendar months from date; one-half if death occurs after six calendar months and within one year, and the full or maximum amount if death occurs after one year. The other conditions are not material to this case. It was tried on the theory that the full amount or no part was due, so that one of the main questions presented in Bradley v. Modern Woodmen of America, 146 Mo. App. 428, 124 S. W. 69, does not arise.

A witness produced on part of plaintiff testified that she was acquainted with plaintiff and her husband Dominic Carter, living in the adjoining house to them; that the last time she had seen Dominic Carter was on the 12th of October, 1900, on which day he told the witness "he was going west; he intended to leave and never come back. . . . He said, 'out west, in California.' He told me he'd never come back." This witness had not seen him and had not heard from or of him since the 12th of October, 1900.

Plaintiff herself testified that the last time she had seen her husband, he expressed his intention of leaving at that time; that was on the 12th day of October, 1900, in the city of St. Louis. Plaintiff testified, referring to what her husband had said, "He told me he was going west and that he never did intend to come to St. Louis again;" that she had never heard from him from that time on; had received no letters from him; had made various inquiries in St. Louis as to his whereabouts but had not found him. She testified that she had heard from others that he was in California. This last answer was properly stricken out, on motion, as hearsay. She gave the names of several parties of whom she had made her inquiry.

Another witness produced by plaintiff testified that acting for plaintiff, he had made inquiries in St. Louis, in an effort to locate Dominic Carter, had inquired of the men with whom he had worked and who were in the same line of employment and belonged to

the same Union. All these knew Carter when he was in St. Louis. The result of his inquiry was that he could not locate him; all he found out from the various parties to whom he resorted was that they said he "had gone away." This latter was stricken out. This was all the evidence in the case, defendant introducing none.

At the conclusion of the testimony the court, giving several declarations of law, found for plaintiff in the amount demanded.

We are compelled to hold that there is no evidence whatever in this case on which we can sustain the finding of the learned trial judge. The action, while very defectively set out in the statement, undoubtedly attempts to state a case as one resting solely on section 6340 of our present statutes, which provides: "If any person who shall have resided in this State go from and do not return to this State for seven successive years, he shall be presumed to be dead in any case wherein his death shall come in question, unless proof be made that he was alive within that time." It must be said of the evidence in this case that it furnishes no proof whatever even tending to show that Dominic Carter was alive within the seven years. But the presumption of death, which is the one on which the statute operates, only arises when these facts are present: first, residence of the person in this state; second, departure of that person from this state; third, the continued absence of that person from this state for seven successive years, no proof being made that he was alive within that time. In the case at bar, all that we have is the statement of the witnesses that Dominic Carter said when leaving home that he was going west and did not intend to return home. At common law that would be an explained absence, absence for adequate cause. "West" is a very indefinite word in this country and in common usage. It does not necessarily or inevitably raise the presump-

tion that the party using it, at the time in St. Louis, meant to convey the idea that he was going outside of this state. But even if we assume that when he said he was "going west," he meant by "west," that he was going to Kansas, Colorado or California, there is no evidence tending to show that Dominic Carter ever left Missouri. He was never seen, dead or alive, outside of Missouri by any one. There is not a particle of proof in the case to show that Dominic ever carried out his expressed intention, even if that is construed as meaning that he intended to go beyond the boundaries of this state. The most that can be said is, that there was some hearsay evidence offered, but excluded, to the effect that some one had heard another say that he, Dominic Carter, was in California. We have had occasion to discuss this statute in some of its phases in the case of Bradley v. Modern Woodmen of America, supra, and do not consider it necessary, in this case, to go into the matter at any length. It is sufficient for the determination of this case to say that an absolutely indispensable requisite to the creation of the presumption of death, under the statute on which the action is founded, is, as before stated, the continued absence of the person from this state for seven successive years. As that has not been made to appear by any evidence in this case, the judgment of the circuit court is wrong.

We are referred to the decision of the Kansas City Court of Appeals in Duff v. Duff, 156 Mo. App. 247, 137 S. W. 909, as contrary to what we here hold. The facts there developed were not such as in the case at bar. The law there announced is exactly as here announced by us.

The judgment of the circuit court is reversed and the cause remanded. *Nortoni* and *Caulfield, JJ.,* concur.