MICHAEL J. WALSH, Administrator, Respondent, v. METROPOLITAN LIFE INSURANCE COMPANY, Appellant.

St. Louis Court of Appeals.    Submitted on Briefs December 4, 1911.    Opinion Filed January 9, 1912.

1. APPELLATE PRACTICE: Theory at Trial: Binding Effect. The appellate court will consider a case on the theory under which both sides tried it and the court submitted it to the jury, although counsel state it was brought on another theory.

2. DEATH: Common Law Presumption from Absence: Sufficiency of Evidence: Life Insurance. In an action on a life insurance policy, evidence *held* sufficient to warrant the common law presumption of death of insured from seven years' unexplained absence; evidence *further held* to show that sufficient inquiries were made for insured.

3. APPELLATE PRACTICE: Review: Instructions Asked by Complaining Party. A party will not be heard to complain of instructions given at his request.

4. INSTRUCTIONS: Refusal: Failure to Define Terms Used. A requested instruction, that the burden of proof is on the plaintiff, but which does not define that term, is properly refused.

Appeal from St. Louis City Circuit Court.—*Hon. W. B. Homer*, Judge.

AFFIRMED.

*Nathan Frank* and *Max W. Oliver* for appellant.

(1) The absence of John Walsh is adequately explained by the fact that he had no close family ties in St. Louis, and when last seen had suffered the dis-

grace of a dishonorable discharge from the United States Army. Biegler v. Supreme Council, 57 Mo. App. 419; Bradley v. M. W. A., 146 Mo. App. 428. (2) The common-law presumption of death does not arise unless it be shown that diligent effort has been made to fine the absentee or to get information as to his whereabouts, and also that he had no possible reason for remaining away from home and failing to communicate with his relatives and friends. Biegler v. Supreme Council, 57 Mo. App. 419; Bradley v. M. W. A., 146 Mo. App. 428; Springmeyer v. Sovereign Camp, M. W. A., 144 Mo. App. 483, 494; Dickens v. Miller, 12 Mo. App. 408; Winter v. Supreme Lodge, 96 Mo. App. 1; Modern Woodmen v. Gerdon, 72 Kan. 391; 2 L. R. A. (N. S.) 809.

*Bert F. Fenn* for respondent.

(1) Absence from the state for seven years in succession without being heard from will raise a presumption of death in absence of evidence to the contrary. R. S. 1899, sec. 3144; Bradley v. M. W. A., 146 Mo. App. 428; Wheelock v. Overshiner, 110 Mo. 100; Hancock, Admr. v. Ins. Co., 62 Mo. 26; Dickens v. Miller, 12 Mo. App. 408; Kauz v. Great Council, 13 Mo. App. 341; Biegler v. Supreme Lodge, 57 Mo. App. 419; Winter v. Supreme Lodge, 96 Mo. App. 1; Lawson, Presumptive Evidence, rule 44, p. 364. (2) A party relying upon the presumption of death arising from an absence for a period of seven years without being heard from need only show that reasonable search has been made immediately after disappearance. Dickens v. Miller, 12 Mo. App. 408; Winter v. Supreme Council, 96 Mo. App. 1; Bradley v. M. W. A., 146 Mo. App. 441; Biegler v. Supreme Council, 57 Mo. App. 422. (3) Where one left his home for a temporary purpose and with the intention to return and who was studious in his habits and attentive to business with

a fixed and permanent residence, and pleasant domestic relations, and had not returned nor been heard of, after a lapse of seven years, by his family, other kin, or acquaintances, these facts may warrant a jury in finding his death at the time. Bradley v. M. W. A., 146 Mo. App. 441; Biegler v. Supreme Lodge, 57 Mo. App. 419; Hancock v. Insurance Co., 62 Mo. 26; Winter v. Supreme Council, 96 Mo. App. 1; Dickens v. Miller, 12 Mo. App. 408. (4) This court will not review the evidence in actions at law when there is substantial evidence to sustain the findings. Handlan v. McManus, 100 Mo. 124; Kolbaum v. Roepke, 27 Mo. 161.

REYNOLDS, P. J.—This action was instituted December 10, 1908, before a justice of the peace of the city of St. Louis to recover $158 said to be due on a policy of insurance issued August 15, 1892, by defendant on the life of one John Walsh. Letters of administration were issued to plaintiff by the probate court of the city of St. Louis, December 10, 1908. Judgment went in favor of defendant in the justice's court but on a trial in the circuit court plaintiff recovered, the trial there being before the court and a jury. From this judgment, after interposing a motion for new trial as well as in arrest, defendant has duly perfected its appeal to this court. Here the only points made by learned counsel for a reversal are, that "no positive proof has ever been presented of the death of the insured, John Walsh, and that the evidence offered at the trial in the circuit court was insufficient to raise the presumption of his death from his absence of more than seven years." It is admitted that inasmuch as there was no conflict in the evidence, appellant introducing no testimony, "the only question to be decided is its sufficiency and the propriety of the instructions of law given by the court." There was evidence in the case tending to prove that John Walsh, the insured, up to 1898, lived in St. Louis; that

he was then a man of twenty-eight or twenty-nine
years of age and unmarried; that both of his parents
had been dead for many years; that from 1890 to
1898 he had made his home with his brothers or sis-
ters; that for a long time while living in St. Louis he
had been a tobacco worker, earning two dollars per
day; that he was a man of cheerful disposition and ap-
parently lived on very brotherly terms with his rela-
tives and had one or more intimate friends in St. Louis.
Prior to 1898 he had been a member of the National
Guard of his state and in the fall of 1898, apparently
having served with that organization in the Spanish-
American war, he was discharged from it at St. Louis
and at once enlisted in the regular army and was
stationed at Jefferson Barracks near St. Louis where
he remained for about six months. While his brother
and sisters knew he was at the barracks, it does not
appear that they had any communication with him in
any way while he was there. He went with his com-
pany to Cuba in the fall of 1898. He told his rela-
tives and friends in St. Louis before his departure for
Cuba, that when his three-year term of enlistment in
the regular army expired, he intended to return to St.
Louis. His relatives not hearing from him, on writ-
ing to the authorities in Washington, were informed
that he had been dishonorably discharged from the
service of the United States on the 6th of March, 1899.
This latter information was obtained by a sister-in-
law of John Walsh in answer to inquiry which she
made of the War Department at Washington. It does
not appear that the relatives advertised the disap-
pearance of John Walsh, or, beyond inquiring of men
who had been in service with him at Havana, Cuba,
and who had returned to St. Louis, that they had made
any very definite search for him.

A witness, who testified to being a life-long and
intimate friend of John Walsh, had made inquiry
from two young men who had been with John in Cuba

and beyond the fact that he had been discharged from the army in March, 1899, and that these men had last seen him in Havana, Cuba, about that time, this friend had been unable to hear anything about him. He had not heard from him by letter, although John had promised to write to him. He also testified that John's intercourse with his relatives in St. Louis was of a very affectionate and friendly kind. It was undisputed that none of the friends or relatives of John in St. Louis had heard anything of him after March or May, 1899.

It was admitted that all the dues called for in the policy had been paid to defendant up to the 10th of December, 1908, when plaintiff qualified as administrator and instituted this suit.

At the instance of plaintiff the court gave three instructions. The first instruction told the jury in substance that if they found from the evidence that prior to the 11th of December, 1908, and prior to the commencement of the suit, John Walsh had disappeared and had not been heard from for seven years, and if they further believed from the evidence that defendant was notified of his death and furnished such proof thereof as the circumstances of the case would permit, and if they further found from the evidence that John Walsh had died before said proof of death and bringing of the action, and the premiums due defendant had been paid up to the time of granting of letters of administration upon his estate and that plaintiff is the administrator, plaintiff is entitled to recover.

The second instruction told the jury that the fact or time of death need not be proved by positive or direct evidence but might be established by an unexplained disappearance; that if the jury believed from the evidence that prior to the 11th of December, 1908, John Walsh disappeared and has not been heard of for seven years and that considering all the other

facts in evidence and as well his habits, character, antecedents and surroundings at and prior to his disappearance, he came to his death prior to 1908, their verdict should be for plaintiff and unless they so found their verdict should be for defendant.

The third instruction was that the amount of the verdict, if they found for plaintiff should be the face of the policy with interest from the 10th of December, 1908, the date of the commencement of this suit.

At the instance of defendant the court instructed the jury, in substance, that although they might find from the evidence that John Walsh disappeared more than seven years ago, yet if they also found and believed from the evidence that at the time of such disappearance he had a probable object in leaving his last known place of abode and finding employment elsewhere without the knowledge of his relatives, then such facts rebut the presumption of death otherwise arising from disappearance and continued absence for seven years and their verdict should be for defendant.

The jury were further instructed at the instance of defendant that in arriving at a conclusion as to whether John Walsh is dead, they should take into consideration what is shown by the evidence as to his character, domestic relations, conditions and circumstances in life, making the abandonment of his home probable or improbable and as showing a probable motive for his disappearance or a probable want of such motive.

The court further instructed the jury at the instance of defendant that the fact, if they found it from the evidence to be a fact, that John Walsh left St. Louis more than seven years ago, since which time nothing had been heard from or concerning him by his immediate relatives, will not entitle plaintiff to recover, if the jury further found and believed from the evidence that there were any facts or circumstances connected with or surrounding his departure which

would make it unlikely that a man of ordinary intelligence would again communicate with his relatives or return to his former home.

Defendant asked two instructions which the court refused. As the only complaint made as to these is as to the second, it is unnecessary to state the first of the refused instructions. In the second, the court was asked to instruct the jury that the burthen is upon plaintiff to establish the fact that John Walsh is dead and unless they were satisfied by the preponderance or the greater weight of the evidence, and under the other instructions of the court, that said John Walsh was dead at the time of the commencement of this action, their verdict should be in favor of defendant.

While the evidence is somewhat meager in respect to showing inquiry as to the whereabouts of John Walsh, the evidence, such as it is, was submitted to the jury under the most favorable possible instructions given at the instance of defendant. Nor was anything in these instructions which were given at the instance of defendant controverted or in conflict with what had been said by the court in the instructions given at the instance of plaintiff. There was evidence before the jury as to the fact of disappearance and the length of that was clearly before the jury, as also the habits, disposition and life of John Walsh before his disappearance.

While counsel for respondent states that this action is founded on section 6340, R. S. 1909 (section 3144, R. S. 1899), counsel on both sides framed their instructions on the theory, not of the statute, but of the common law. As they chose to adopt that and both acquiesced in it and the court submitted it to the jury on that theory, we consider it on that theory.

We are unable to agree with the learned counsel for appellant that the case lacks the elements necessary to recover at common law. There is evidence in the case of an unexplained absence, without any facts or

circumstances tending to explain it. There was no evidence of domestic infelicity, of dissipation, of lack of family affection between John Walsh and his brothers, sisters and sisters-in-law, between him and his family, with whom he had lived all his life. There is evidence that his employment was open for him on his return; that he expressed an intention to return at the end of his enlistment. He did not return and has not been heard of by any one from that day to this, some eight or nine years prior to the institution of the suit. In the instructions given at the instance of defendant, the court submitted the question of probable cause for absence, and as we think, went beyond the evidence in the case in doing that, unless it may be said that the dishonorable discharge is a "probable cause." But these were defendant's instructions and it cannot complain. It is true that the same amount of inquiry was not made in this case as appears to have been made in other cases, but the extent of that inquiry was before the court and the jury and we are not prepared to say that it was so insufficient as to warrant us in overturning the conclusion arrived at by the jury.

There was no error in refusing the second instruction asked by defendant. It undertook to tell the jury that the burden of proof was on plaintiff, without any definition of what that term as there used meant. [McMillen v. Elder, 160 Mo. App. 399, 140 S. W. 917, l. c. 919.] The Supreme Court as well as the Courts of Appeals have been over this matter of the presumption of death, both at common law and under our statute, in a number of cases. The principles governing them will be found by reference to Hancock, Admr. v. American Life Ins. Co., 62 Mo. 26; Donaldson v. Lewis, 7 Mo. App. 403, l. c. 407; Biegler v. Supreme Council of Am. Legion of Honor, 57 Mo. App. 419; Winter v. Supreme Lodge K. of P., 96 Mo. App. 1, l. c. 13, 69 S. W. 662; Bradley v. Modern Woodmen of

America, 146 Mo. App. 428, 124 S. W. 69; Duff v. Duff, 156 Mo. App. 247, 137 S. W. 909; Carter v. Metropolitan Life Ins. Co., 158 Mo. App. 368, 138 S. W. 49; Adams v. New York Life Ins. Co., 158 Mo. App. 564, 138 S. W. 921; Martin v. Modern Woodmen, 158 Mo. App. 468, 139 S. W. 231. We can add nothing by way of exposition of the law to what is to be found in these cases.

The judgment of the circuit court is affirmed. *Nortoni* and *Caulfield, JJ.,* concur.