### M. A. ROSS ET AL. v. E. A. BLOUNT ET AL.

Decided February 20, 1901.

**Proof of Death—Absence.**

   The fact that an owner of land, then thirty-five or forty years old, went to California in 1854, to work in the mines, leaving his family in Texas, and ceased to write and had not been heard from by them since the beginning of the Civil War, was not, in the absence of evidence of unsuccessful inquiry for him in California, conculsive proof that he was dead and that the land had descended to his heirs in 1900.

Appeal from Mills.  Tried below before Hon. Jno. M. Furman.

*J. E. Shropshire,* for appellants.

*Goodwin & Harrison* and *Matthews & Browning,* for appellees.

FISHER, CHIEF JUSTICE.—This is an action of trespass to try title, by the appellants against the appellees, for the Archibald Thompson survey, situated in Mills County.  The case was tried before the court without a jury, and judgment rendered in favor of the defendants below, appellees here.

   The following is all the evidence in the record tending to establish title in appellants:

"Plaintiffs introduced the depositions and answers of plaintiff M. A. Ross, which were in substance as follows:  That she was one of the plaintiffs to this suit, and was the wife of J. D. Ross, the other plaintiff herein; that her father's name was Archibald Thompson, and that her said father and mother were living in Falls County, Texas, in the early part of A. D. 1854, where they had lived for a couple of years; and in the winter or early spring of said year her said father left the State of Texas and went to the State of California, and never returned to Texas after having so left.  That when he left this State he left his family, consisting of a wife and two daughters, with plaintiff's or M. A. Ross' uncle,—her mother's brother, Anthony Blythe, in Falls County, Texas. That in about one year after Thompson left plaintiff's mother died, and on April 12, A. D. 1858, Anthony Blythe, her uncle, died.  That plaintiff's sister died, and she is informed that her sister's only child and heir died.  That plaintiff is the sole heir of her said father, Archibald

Thompson; that said Thompson could write; that he had frequently written letters home to his family, and continued to write such letters till the commencement of the Civil war, and along about that date he ceased writing and she had never been able to hear from him since. That she knew he had not been back to Texas since he left in 1854, or he would have come to see his children. That her father always signed his full name, thus, Archibald Thompson, when he wrote. That she had not seen him write that she remembered of, but she had frequently seen letters written by him to members of the family, and she knew her father's handwriting. That two letters sent to her attorney, J. E. Shropshire, at Brady, Texas, were written by her father and signed by him. She knew this from frequently having seen his letters so signed, and from a signature of his that was written in an old hymn book that was the same which she had preserved. That she knew nothing of her father having lived in Newton County, Texas; that if he had ever lived there, or owned a ferry boat on the Sabine river, she did not remember it. That she was only 7 years old when her father left and 8 years old when her mother died. That her father had lived in Falls County, Texas, Bell County, Texas, and Harrison County, Texas, of her own knowledge or she was so informed. That she was born in Harrison County, Texas, in A. D. 1847, and in 1854 he (my father) was between 35 and 40 years old. I first learned of the existence of the Archibald Thompson survey sued for about ten years since, when I saw an answer in the Goldthwaite Mountaineer advertising some lands for sale, and among them was some lands I thought belonged to my father.

"Plaintiffs next introduced a letter from Archibald Thompson, signed by his full name, and written by said Thompson in the Cherokee Nation on December 29, A. D. 1854, to Anthony Blythe, describing his trip from Texas to Missouri with a herd of cattle, and from there back to the Cherokee Nation, I. T., where he was then waiting for an opportunity to go on to California. In it he mentioned 320 acres of land that he, Thompson, bought from Anthony Blythe's father, and authorized Blythe to sell the land and get the proceeds out for the benefit of his, Thompson's, children, and there was no other land referred to in the letter, and instructing him to manage the business as he thought best, stating that he would come and see the family, but it was 425 miles distant from where he was to them. Plaintiffs next introduced a letter of same kind and signature, headed and dated in California, Calaveras County, December 30, A. D. 1855. It described his trip, the country, etc., and stated that he, Archibald Thompson, was going to work hunting gold. He also referred to the 320 acres of land referred to in his former letter and no other land. Plaintiffs then introduced chapter 84, pages 137 to 141, inclusive, Special Laws of the State of Texas, passed by the Fifth Legislature of the State of Texas, on February 13, 1854, in which the Legislature grants one league and one labor of land to Archibold Thompson or his heirs."

The judgment of the court below can be maintained upon the ground

that the evidence of the plaintiff was not sufficient to entitle her to recover.     It is clear from the testimony that she relies upon the fact that she was the sole surviving heir of her deceased father, Archibald Thompson; and it appears from the special act of the Legislature that the grant was intended as a donation to Archibald Thompson or his heirs.   Such being the case, there is nothing in the record tending to negative the proposition that the land in controversy was the separate property of Archibald Thompson.   The evidence shows that he moved to California about 1855; and other than the naked fact that the plaintiff had not heard from him since that time, there is nothing in the record tending to show that he is not still residing there and was alive at the time of the trial of this case.

An absence of seven years may, under certain circumstances, raise the presumption that the absent one is dead, but that presumption, under the facts in this case, does not arise.   If he went to California, and, as the testimony shows, he intended to work there in the mines, that place became his residence, and in the absence of evidence tending to show that a search and inquiry was made for him there which resulted in failing to ascertain his whereabouts or whether he is alive, would not raise the presumption that he was dead.

Before the plaintiff could recover, the burden was on her to establish the death of her father.   This she has not done; therefore, the judgment of the court can be affirmed upon this ground.   But, however, after a careful examination of the points raised in appellants' assignments of errors, we are prepared to hold that none of them are well taken, and they present no reversible error.

There is evidence coming from the appellees, which tends to show that the grant in question was made to a different Archibald Thompson than the ancestor of the plaintiff, and the evidence further shows that the defendants hold under conveyances executed by this Archibald Thompson.

In view of the fact that we can rest the judgment upon the failure of plaintiff to establish title, we deem it unnecessary, as said before, to discuss the several assignments of errors presented by the appellants, but we are of the opinion that none of them are well taken.

We find no error in the record and the judgment is affirmed.

*Affirmed.*