SUPREME RULING OF FRATERNAL MYSTIC CIRCLE v. HOSKINS et al. (No. 1343.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 11, 1914. Rehearing Denied Nov. 19, 1914.)

1. INSURANCE (§ 693*)—MUTUAL BENEFIT INSURANCE — ACTIONS — SUFFICIENCY OF EVIDENCE OF DEATH.

Where a benefit insurance certificate provided for payment upon satisfactory proof of the death of the member, a by-law providing that the member's absence or disappearance from his last known place of residence for any length of time should not be evidence of his death, and that no right should accrue under his certificate, nor should any benefits be paid until conclusive proof had been made of his death, aside from any presumption arising by reason of his absence, was void under Rev. St. 1911, art. 5707, providing that any person absenting himself, beyond sea or elsewhere, for seven years successfully shall be presumed to be dead, unless proof be made that he was alive within that time, since the by-law, construed in connection with the certificate, did not except the absence of a member from the risks assumed, but merely provided what should constitute "satisfactory proof," thereby restricting a rule of evidence, contrary to public policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1833; Dec. Dig. § 693.*]

2. INSURANCE (§ 699*)—REINSURANCE—"LIVING, CONTRIBUTING MEMBERS IN GOOD STANDING"—SUFFICIENCY OF EVIDENCE.

The constitution and laws of a benefit society provided that any member who should abscond or depart from his last place of residence and remain away for one year without reporting his address to the secretary, should forfeit his membership; that the secretary should not receive from any person any assessment, dues, or fines on account of such member, but should notify the person offering to make the payments that proof of the member's location or residence was necessary, suspend the member, and report his action to the supreme secretary. Defendant took over the membership and affairs of such society by a contract providing that all "living, contributing members in good standing" thereby became members of defendant, and that benefit certificates issued to such members were thereby assumed by it. A member disappeared from his last known place of residence more than a year prior to this contract and was not

thereafter heard of within seven years from the date of his disappearance, but his dues had been paid and no attempt had been made to suspend him, though the facts were known to the local secretary, and reported by him to the society. There was no evidence that he was actually dead at the date of the contract. Held, that the member was a contributing member in good standing at the date of the contract, and the evidence warranted a finding that he was a living member; especially as Rev. St. 1911, art. 5707, attaches no legal consequences to a person's absence or disappearance, until the expiration of the seven years necessary to raise a presumption of death.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 699.*]

3. INSURANCE (§ 755*)—MUTUAL BENEFIT INSURANCE—SUSPENSION—WAIVER OR ESTOPPEL.

Where the constitution and laws of a benefit insurance society provided that any member who should remain away from his last place of residence for one year should forfeit his membership; that the secretary should not receive assessments, dues, or fines on his account, but should notify the person offering them that proof of the member's location or residence was necessary, suspend the member, and report his action to the supreme secretary, but, though a member's disappearance was known to the local secretary and reported by him to the society, no notice was given to a person paying the dues and assessments that proof of the member's location or residence was necessary, and, on the contrary, such payments were accepted and no attempt made to suspend the member, the society waived its right to suspend him, and was estopped from asserting a suspension to defeat a recovery on the certificate after he had been absent for seven years.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1907–1916; Dec. Dig. § 755.*]

4. DEATH (§ 2*) — PRESUMPTION FROM ABSENCE — STATUTORY PROVISIONS — "ELSEWHERE."

"Elsewhere" in Rev. St. 1911, art. 5707, providing that any person absenting himself beyond sea, or elsewhere, for seven successive years, shall be presumed to be dead, does not, as claimed, mean outside the state.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 1–3; Dec. Dig. § 2.*

For other definitions, see Words and Phrases, First and Second Series, Elsewhere.]

Appeal from District Court, Gregg County; W. C. Buford, Judge.

Action by Mrs. Margaret E. Hoskins and others against the Supreme Ruling of the Fraternal Mystic Circle. From a judgment for plaintiffs, defendant appeals. Affirmed.

This suit is by the beneficiary upon a life insurance policy. Appellee is the aunt of Joseph T. Hoskins, and his was the life insured. The policy was issued May 27, 1901, and soon thereafter was delivered to appellee, who regularly paid all the premiums which became due upon it after issuance up to and including May, 1913. In the year 1905 Joseph T. Hoskins resided in Dallas, Tex., and was engaged in work there, and this was his last known residence. He was never seen nor heard of after the fall of 1905, though his aunt and relatives made immediate, continued, and very exhaustive, but unavailing, efforts to find or locate him. The

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

defenses of the appellant are: (1) That the by-laws, which are a part of the contract, provide that absence or disappearance of a member shall not be evidence of the death of such member, and no rights shall accrue until conclusive proof of actual death has been made; and (2) that in taking over the business affairs and members of the American Guild the appellant, by its contract, only assumed contracts on the lives "of all living, contributing members in good standing in the American Guild," of date. May 27, 1907. There was a trial to the court without a jury, and judgment was rendered in favor of the appellee.

The court made the following findings of fact, which are supported by the evidence, namely:

"1. Besides the matters of fact expressly, or by provisions of law, admitted to be true by the pleadings of the plaintiff and defendant, I find the following facts to have been proven on said trial:

"2. That Joseph T. Hoskins lived at Longview, Tex., practically all his life, up to July, 1904, when he left for Ft. Worth, Tex., where he remained for a period of probably over one year, during which time he was seen by a number of people and to them expressed affection and regard for plaintiff Mrs. Margaret E. Hoskins and intention to return to his home in Longview, and was last seen in Dallas in the fall of 1905, and that he resided in Dallas at that time, and since said time he has never been seen or heard of since nor shown to be alive. Mrs. Hoskins heard from him regularly up to the time of his disappearance.

"3. That diligent search and inquiry has been made for said Joseph T. Hoskins in Dallas and Ft. Worth, and advertisement, with a liberal reward (inserted in a large daily newspaper in Dallas), for the address or whereabouts of Joseph T. Hoskins. Such inquiry or advertisement made or inserted two or three years after the disappearance of said Joseph T. Hoskins. That no information was ever received from said Joseph T. Hoskins as a result of said inquiry or advertisement.

"4. That L. D. Stansbury, local secretary of the American Guild and worthy collector of the defendant order, knew when Joseph T. Hoskins left Longview, and knew that soon thereafter his address and whereabouts became unknown, and that such facts were communicated to the American Guild by L. D. Stansbury, its local secretary, prior to May, 1907.

"5. That the fact of the disappearance of Joseph T. Hoskins was communicated to the defendant order by L. D. Stansbury. its worthy collector, several times between 1907 and 1913.

"6. That defendant had notice from plaintiff, through her attorney, on or about April 22, A. D. 1913, that Joseph T. Hoskins had disappeared for a long period of time and his address was unknown and has been so for a long period of time; that in May, 1913, defendant furnished blanks for proof of death of Joseph T. Hoskins, and mailed them to the. attorney of plaintiff; that same were returned later properly filled out, and proof of death shown by seven years' absence, supported by affidavits of a number of persons; that in May, 1913, defendant accepted payment of the April dues of Joseph T. Hoskins, paid by plaintiff Mrs. Hoskins; that said dues have never been returned to plaintiff Mrs. Hoskins.

"7. That L. D. Stansbury, local secretary and worthy collector of the American Guild and defendant order from 1904 to 1913, was, during said time, a state and national officer of said orders.

"8. That all dues, assessments, or premiums due the American Guild or defendant on the policy of Joseph T. Hoskins have been promptly paid up to May, 1913, when further dues (were) refused by defendant, and that plaintiff has paid defendant $205 in such dues.

"9. That Joseph T. Hoskins was a living, contributing member in good standing of the American Guild in good standing in May, 1907, when defendant reinsured the members of the American Guild."

The contract of assumption and all the by-laws of the appellant are made a part of the findings of fact here, and. as they can be referred to in the record, it is unnecessary to set them out.

Meador & Davis, of Dallas, for appellant. M. L. Cunningham, of Longview, for appellees.

LEVY, J. (after stating the facts as above). [1] The laws of the appellant, as well as the laws of the American Guild, contain the following article:

"The absence or disappearance of a member of the Fraternal Mystic Circle from his last known place of residence for any length of time shall not be evidence of the death of the member, and no right shall accrue under the certificate of membership to a beneficiary, nor shall any benefits be paid until conclusive proof has been made of the death of the member aside from any presumption that might arise by reason of his absence."

And the appellant pleaded as a defense the provision set out. The trial court, after hearing the case on its merits, made the conclusion of law in respect to the by-law:

"That a provision making ineffective proof of death by seven years' absence is void, being contrary to article 5707, R. S. of Texas, 1911."

Believing, as we do, that the ruling of the court in the respect mentioned was correct and should be sustained, the first and second assignments of appellant, challenging the conclusion of law, are overruled.

The by-law we are considering, which was made a term of the contract, provides that absence without intelligence "shall not be evidence of the death of the member," and requires "conclusive proof," before a liability to pay the policy arises, "of the death of the member aside from any presumption that might arise by reason of his absence." As expressed in the face of the policy, though, the substantial thing the parties had contracted for was that the insurance company should pay the beneficiary the sum of money specified "upon satisfactory proof of the death of the said member while in good standing upon the books of the supreme chapter." The language of the by-law, considered in connection with the language of the policy, would clearly indicate that the insurance company and the insured were agreeing that "satisfactory proof," as expressed in the policy, of the death of the insured must, in order to enforce liability to pay the policy, rest in and be confined exclusively to proof of the actual death of the insured. As the agreement of the parties, as shown by

the language of the by-law, was entirely in respect to "the evidence" that would be "satisfactory proof" of the death of the insured, it would be a restrictive provision of contract in respect only to a rule of evidence, and not a stipulation excepting absence as in the nature of the risk assumed. Therefore the agreement, as expressed in the by-law, declaring that absence without intelligence shall not be evidential data to enforce liability to pay the policy, would, if controlling upon the courts as a term of private contract, operate to prevent the application of article 5707, R. S. of 1911, to such evidential fact, and the legal consequences attached to the fact, as proven here, of absence for seven years without intelligence would be ineffective. As the courts are required, as a part of their duty, to enforce the statutes as the law prescribes shall be done, a failure of the court to apply the statute mentioned to the facts of this case would be allowable only upon the ground that the parties had the legal right of contract in respect to the proof. It is generally said that no person has a vested right in rules of evidence. Cooley's Cons. Lim. (7th Ed.) 524; 3 Page on Contracts, § 1765. The reason, therefore, as laid down in Cooley, supra, is because "the rules of evidence pertain to the remedies which the state provides for its citizens, and generally in legal contemplation neither enter into and constitute any part of any contract nor can be regarded as being the essence of any right which a party may seek to enforce." As it is correct, according to the rule, that no person has a vested right in rules of evidence, and it cannot be regarded as constituting any part of a private contract, then it would follow that parties may not go to the extent of making a valid term of private contract which has the effect of making ineffective an existing statute declaring the legal consequence that attaches to proof of certain facts. In the case of Eaton v. Ins. Co., 136 S. W. 817, the court held void a by-law which sought to deprive a policy holder of a statutory right to sue in the county where the insured resided at the time of his death. See, also, Travelers' Ass'n v. Branum, 169 S. W. 390. Under the statute making a fire insurance policy a liquidated demand in case of total loss of a building, an agreement of the parties providing for the payment of the actual value was held void as contravening the statute and paralyzing its execution by the courts. Ins. Co. v. Levy, 12 Tex. Civ. App. 45, 33 S. W. 992. We see no reason why the principle of public policy applied to the latter case above should not apply to the question involved in the instant one, when in each instance the agreement interrupted the application of an express statute.

Appellant cites cases allowing waiver of the statute of limitations, as being analogous to the question here, but we do not believe that the principle involved in those cases would extend to the question here. Such cases only furnish the restricted rule that parties may go to the extent of agreeing to modify or waive a course of procedure such as pertains to merely personal privileges or such as are created by statute for their benefit. There is a wide difference between the waiver of procedure that pertains merely to personal privileges or benefits, and agreement that contravenes an express statute provided for the enforcement of law in civil actions by the court. The case of Kelly v. Benefit Ass'n, 46 App. Div. 79, 61 N. Y. Supp. 394, cited by appellant, seems to broadly assert, without discussion or furnishing a reason or principle for the ruling, that the parties had a legal right to agree upon a provision practically identical with the instant one, and that it was not invalid. We are not inclined to follow the same as authority for a similar ruling in the instant case.

[2, 3] The contract made between appellant and the American Guild at the time appellant took over the membership and affairs of the American Guild provided, "that all living, contributing members in good standing as of this date (May 27, 1907) in the American Guild do hereby become members in good standing of the Supreme Ruling of the Fraternal Mystic Circle," and "that benefit certificates in force heretofore issued or assumed by the American Guild to its now living, contributing members in good standing, are hereby assumed by the said the Supreme Ruling of the Fraternal Mystic Circle." The constitution and laws of the American Guild provided:

"Section 14. Any member who shall abscond, remove, or depart from his home, or last place of residence and remain away for a period of one year, and not report to the secretary of his chapter his location, his post office address, shall thereby forfeit his membership, and his certificate shall become null and void. The secretary shall not receive from any person any monthly assessment, special assessment, dues or fines for or on account of any member who has been absent and whose residence has been unknown for one year, but he shall notify the person offering to make such payments that proof of the member's location or residence is necessary, and he shall at once suspend the member and report his action to the supreme secretary with his reasons therefor, together with the post office address of the beneficiary and the last known residence of the member. Upon satisfactory proof of the member's whereabouts the supreme governor may order him reinstated in the order without expense. In case of the failure of the member, his beneficiary, or other persons interested in his certificate to make proof of the member's whereabouts, his suspension shall remain permanent and binding, and neither the member, his beneficiary, nor any other person, shall have any right to participate in the funds of the order."

The appellant makes the point that it is not liable to the beneficiary under its contract, because the insured had disappeared for more than 12 months prior to May 27, 1907, and had become suspended by virtue of the terms of the laws of the American Guild,

and therefore was not a "living, contributing member in good standing of the American Guild" at the time of the contract. The assignments of error numbered 3 to 13 inclusive, presenting the point, we conclude should be overruled. It is not disputed that all dues and premiums called for by either the American Guild or appellant were paid in due time up to and until May, 1913. The insured therefore was certainly a "contributing" member of the American Guild on May 27, 1907. And, as the court finds as a fact from all circumstances in evidence that the insured "was a living, contributing member" in May, 1907, when the appellant reinsured the members of the American Guild, we would be bound by that finding of fact that he was "living," unless it was unwarranted by proof. There is no pretense in the evidence that he was actually dead in May, 1907, and there is an absence of any proof showing, or from which it could be inferred, that he died at a specific time. The court's finding of fact was therefore warranted. Article 5707 does not, we think, attach legal consequences to absence without intelligence until the expiration of the seven years. The insured being, according to the evidence, both "living" and "contributing," and there being no pretense in the evidence of any attempt to suspend or of there being actual suspension of him until May, 1913, it would appear that the insured was "a member in good standing in the American Guild" when the appellant reinsured the members of the American Guild. In this connection it appears that appellant issued its certificate of reinsurance in May, 1907. By issuing the certificate of reinsurance it would thereby appear, and could be inferred, that appellant decided and considered the insured, within the terms of its contract with the American Guild, as a member in good standing, and was willing to assume and continue the contract of insurance held by the insured. Having so contracted with the insured, and receiving all dues, the appellant would be bound by its contract of assumption, and could not avoid the same in the absence, as here, of pleading and proof of fraud, accident, or mistake. It further appears from the court's findings of fact, which are supported by proof:

"That L. D. Stansbury, local secretary of the American Guild and worthy collector of the defendant, knew when Joseph T. Hoskins left Longview, and knew that soon thereafter his address and whereabouts became unknown and that such facts were communicated to the American Guild by L. D. Stansbury, its local secretary, prior to May, 1907. That the fact of the disappearance of Joseph T. Hoskins was communicated to the defendant order by L. D. Stansbury, its worthy collector, several times between 1907 and 1913."

Having knowledge, as it appears, of the facts that the insured had "removed" or "departed" from his home or last place of residence, and, notwithstanding this knowledge, continuing, without any attempt at suspension, to collect and receive all dues, the American Guild would, in the facts, be held to have waived any right of suspension of the insured, and would be estopped from asserting a suspension. Therefore, assuming, for the moment, that the appellant could go behind its own contract of reinsurance and predicate any right of forfeiture under the American Guild that the American Guild could legally assert, the appellant could predicate no greater legal right than could the American Guild. According to the by-law it is required of the secretary, in order that the suspension be finally operative, that he shall "notify the person offering to make such payments that proof of the member's location or residence is necessary." There is no evidence that the secretary gave this notice, nor that he made any attempt to suspend the member. Clearly, neither the American Guild nor the appellant could very well assert that there is proof that the American Guild or appellant had so far brought itself within the terms of its by-law regarding suspension as that it could assert suspension under the terms of the law governing suspension. Failure on the part of the secretary of the American Guild or the appellant to perform the duty as to notice required would preclude any insistence that the insured was suspended under the by-law at the time of the contract of May 27, 1907.

[4] By the fourteenth assignment of error appellant contends that "elsewhere" under article 5707, R. S., means beyond the confines of Texas. The appellant cites Turner v. Sealock, 21 Tex. Civ. App. 594, 54 S. W. 358, and Latham v. Tombs, 32 Tex. Civ. App. 270, 73 S. W. 1060. The case of Woodmen v. Ruedrich, 158 S. W. 170, explains these two cases and decides against appellant's contention.

The judgment is affirmed.

HODGES, J., disqualified, and not sitting.