MARJORIE HEATH v. SALISBURY HOME TELEPHONE COMPANY and CITY OF SALISBURY, Appellants.—33 S. W. (2d) 118.

Division Two, December 4, 1930.

876

*Matthews & Jones* and *Lamb & Lamb* for appellant Salisbury Home Telephone Company; *Franklin & Son* and *Roy McKittrick* for appellant City of Salisbury.

*Shelton & Shelton* and *Collet & Son* for respondent.

878

BLAIR, P. J.—Action for damages for the wrongful death of plaintiff's unmarried, minor son, William C. Prine. Plaintiff had judgment for $5,000 against both defendants and each took an appeal to the Kansas City Court of Appeals. That court reversed the judgment and remanded the case, but, deeming its decision to be

in conflict with a decision of the St. Louis Court of Appeals, the case was transferred to this court under the constitutional mandate.

Plaintiff's son was nine years old. He was electrocuted on August 23, 1924, when he came in contact with a loose wire of the telephone company which was hanging over a defectively insulated wire of the municipal lighting plant of the defendant city. The latter wire carried 2200 volts of electricity. As counsel conceded upon the argument here that plaintiff made a case of liability as for negligence against both defendants, the facts need not be detailed. The question, which vexed the Kansas City Court of Appeals and which is for decision here, is whether a case was made on the allegation of plaintiff's petition that she was the "only surviving parent of William C. Prine."

Section 4219, Revised Statutes 1919, by reference to Section 4217, gives the right of action for the death of an unmarried, minor child to the father and mother, or to the surviving parent, in case of the death of either. It is conceded that it was necessary for plaintiff to prove that Charles L. Prine, her former husband and the father of deceased, was dead when the suit was filed. [Clark v. Kansas City etc. Railroad Co., 219 Mo. 524, 118 S. W. 40, and cases.] Plaintiff secured a divorce from Prine and married Heath prior to the death of her son. She offered no direct proof of Prine's death and depended upon the presumption of his death by reason of his absence for seven years.

Plaintiff's evidence tended to show the following facts: She and Prine were married in June, 1913, and lived in Moberly, Missouri, about a year and a half, where he was employed part of the time by the telephone company. Part of the time he was unemployed. In November, 1914, they went to Oklahoma City, Oklahoma, and procured a couple of rooms for light housekeeping and established a home there. He failed to secure work and sent plaintiff back to Missouri the last of December. Deceased was born in Moberly, February 12, 1915.

Prine sent plaintiff a total of only fifteen dollars after she came back to Missouri. He wrote her two or three letters, the last one being in April, 1915. He did not reply to the last letter plaintiff wrote him from Moberly in May, 1915. About that time plaintiff went to St. Louis and secured work. In the fall of 1915, she wrote three letters to Prine which were never returned. She received no answer to any of them. It does not appear whether the envelopes carried plaintiff's address.

In November, 1916, plaintiff sued Prine for divorce, securing publication service upon her allegation that he was a non-resident of Missouri. She obtained a divorce and the custody of the deceased. In June, 1920, she married Heath. The last plaintiff knew personal-

ly of Prine's whereabouts was in April, 1915. He was then in Oklahoma. She had heard nothing of or from him since that time, except at the trial later referred to.

Defendants introduced six witnesses who were well acquainted with Prine. Without going into details of the specific facts testified to by each, it suffices to say that Prine was seen and fully recognized by them and they conversed and visited with him in Moberly and in Kansas City and vicinity at various times between 1922 and 1925.

There was a former trial of the case at which five of the witnesses just mentioned were produced by defendants and testified the same way they did at the last trial about having seen and conversed with Prine in Missouri. After hearing that testimony, plaintiff took a nonsuit. Thereafter, and before instituting the present suit on August 18, 1925, plaintiff and her attorneys and others made diligent efforts to locate Prine at places where said witnesses testified they had seen or heard of him, but without avail.

Plaintiff relies upon both the common law and statutory presumptions of death from seven years' absence. Section 5396, Revised Statutes 1919, reads as follows:

"If any person who shall have resided in this State go from and do not return to this State for seven successive years, he shall be presumed to be dead in any case wherein his death shall come in question, unless proof be made that he was alive within that time."

The Kansas City Court of Appeals held, and we think properly so, that the evidence in the case was not sufficient to authorize the indulgence of the statutory presumption of death. The statute contemplates that the absent person shall have been a resident of this State and shall have departed from this State at the time he dropped out of sight and disappeared and shall not have returned to it for seven successive years. The statute does not authorize the presumption of death where such person was a resident of another state at the time he disappeared. This is so not only because he could not then be said to have gone from this State into an unaccounted-for disappearance, but also because there would then be no sufficient reason to expect him, within seven years or any particular time, to return to the state of which he had ceased to be a resident. [Duff v. Duff, 156 Mo. App. 247, l. c. 255, 137 S. W. 909; Bradley v. Modern Woodmen of America, 146 Mo. App. 428, l. c. 441, 124 S. W. 69; Gray etc. v. McDowell, 69 Ky. 475, l. c. 482; Supreme Ruling of Fraternal Mystic Circle v. Hoskins (Tex.), 171 S. W. 812; Ross v. Blount (Tex.), 60 S. W. 894; Latham v. Tombs (Tex.), 73 S. W. 1060; Stiles v. Hawkins (Tex.), 207 S. W. 89, l. c. 96.]

Plaintiff concedes the correctness of this rule, but contends it has no application where a person "leaves the State and becomes a non-resident of this State, yet with no known fixed residence elsewhere."

It is disclosed by plaintiff's evidence that she and Prine left Missouri in November, 1914, and went to Oklahoma City and established "headquarters and a home at that place and were keeping house." The last that plaintiff knew of Prine in April, 1915, he was still in Oklahoma, with every indication that he intended to remain there as a permanent resident. So far as the evidence tends to prove anything, it shows that Prine became a "fixed" resident of that state. It is the merest conjecture that he thereafter became a wanderer without any fixed place of residence. In this respect this case differs from Adams v. Life Insurance Co., 158 Mo. App. 564, 138 S. W. 921.

But, assuming that Prine was a resident of this State and was only temporarily in Oklahoma, when he sent plaintiff back to Missouri and left her without support, and that he thereafter acquired no fixed place of residence, still there is no sufficient proof of circumstances in the case from which the jury was authorized to find that he did not return to this State for seven successive years. The only inquiry shown by the evidence concerning the possible presence of Prine in Missouri, after he and plaintiff went to Oklahoma in 1914, was made after the first trial, in an effort to find him and get him to join plaintiff in the suit. When asked what her object was in hunting for Prine after the first trial, plaintiff said: "I wanted him to join me in this case."

So far as we can find, there is not a word of testimony in the record showing that Prine had never lived at any place in Missouri other than Moberly or that he had no relatives at any other place in Missouri whom he would likely visit in the event of his return to Missouri. The inquiry actually made was to find him for the purposes of this suit and not to ascertain whether or not he had returned to Missouri within seven years after he went to Oklahoma.

The evidence was not sufficient to authorize a finding that Prine had been absent from Missouri for seven years. For want of such proof plaintiff was not entitled to invoke the presumption of death authorized by Section 5396, Revised Statutes 1919, even if Prine was a resident of this State when he disappeared. Nor does the proof any better satisfy the requirements of the common law on the subject. The character of proof required to authorize indulgence by a jury of the common-law presumption of death is ably and clearly stated by Judge ROMBAUER as follows:

"Where, however, as in the case at bar, there is a disappearance and silence for seven years, under circumstances from which no reasonable mind could draw the inference that the absence was voluntary; where the absence is wholly unexplained and unaccounted for on any rational theory save that of death; where a man of industrious habits, and attached to his family, leaves it without any

provocation, and never communicates with them thereafter; where reasonable search is made immediately after the disappearance, and is kept up for some time without furnishing any clew whatever; where, in fine, all these things occur, the court is justified in instructing the jury that, upon a finding of these facts, they may presume the absentee to be dead after an expiration of seven years." [Biegler v. Supreme Council of American Legion of Honor, 57 Mo. App. 419, 1. c. 423; see also Walsh, Admr., v. Insurance Co., 162 Mo. App. 1. c. 552 and 553, 142 S. W. 815; Hancock, Admr., v. American Life Insurance Co., 62 Mo. 26.]

The plaintiff's evidence was that Prine was not industrious and was only an indifferent worker and out of employment much of the time; that he took plaintiff to Oklahoma when she was in a delicate condition, although he had no work to support her; that, after about six weeks elapsed and as the time of her confinement approached, when a normal, affectionate husband might be expected to stand by his wife, he sent her back alone to Moberly, where she had relatives, and he remained in Oklahoma without expressing any intention either of joining plaintiff in Missouri presently or of having her return to him in Oklahoma; that, after plaintiff reached Missouri, he sent her a total of fifteen dollars at a time when she necessarily required several times that amount to keep her from dependence upon the bounty of relatives; that he only wrote to her two or three times and thereafter utterly failed to send her money or even to write to her. The only reasonable conclusion under this evidence is that Prine was anxious to escape the burden and inconvenience of parenthood and that he did not have the devotion to or the affection for his wife which ordinarily is sufficient to cause a man to return to his wife, if he is able to do so, or to communicate with her if he cannot go to her. In fact, plaintiff's evidence tends to show abandonment of her by Prine and hence that there was no reason why he would likely wish to communicate with her.

The evidence further fails to show that plaintiff made any adequate attempt to secure information as to Prine's whereabouts from persons in Oklahoma where he was last known to have been living. For all the evidence discloses, Prine may have remained in or near Oklahoma City for years after he shipped his expectant-mother wife back to Missouri.

But there is a still further fact which should be regarded as an obstacle to indulgence of the common-law presumption of the death of Prine. A required element of proof, before such presumption may be indulged, is that no tidings of the missing person shall have been received by those entitled to hear from him. As already stated, a former trial of the case was had in 1924 or 1925 and, at the conclusion of the testimony of five witnesses who were acquainted with

Prine and said that they had seen him alive and well in this State during 1922 and 1923, plaintiff took a voluntary nonsuit. Whatever might have been the effect at the first trial of testimony of that character upon the claimed common law presumption of Prine's death, we need not now consider. In his opening statement at the second trial, the fact of such testimony was admitted by plaintiff's counsel and plaintiff herself testified that she was not only present at that trial and heard these witnesses testify under oath that they had seen and talked with Prine, but also that, after the nonsuit was taken, she had talked with at least two of such witnesses and endeavored to enlist their aid to enable her to find Prine and get him to join her as a party to the suit.

At the second trial, the same witnesses testified positively and unequivocally concerning the fact that they had seen Prine alive in Missouri in 1922 and 1923 and had talked and visited with him. At least two of these witnesses knew plaintiff herself about the year 1914 as the wife of Prine. They identified him, in addition to his well known general and familiar appearance, by a long scar extending along the side of his neck to the point of his chin. Two or three of them recalled the fight in which Prine received the wound which left the scar. One of these witnesses spent two days with Prine in Kansas City. These witnesses could not have been mistaken about the facts concerning which they testified. The only question was whether they were deserving of credit as witnesses. Not the slightest effort was made at the last trial to discredit any of these witnesses. The investigation made subsequent to the first trial was not directed to ascertainment of the truth of the testimony of these witnesses, but to enable plaintiff to avoid losing her case by finding Prine and joining him as a party plaintiff. At the conclusion of the testimony of these witnesses at the last trial defendants rested their case and plaintiff offered not a single word of testimony in contradiction or impeachment.

As it was thus shown by counsel's statement and by plaintiff's testimony as part of her own case that she had tidings in most solemn and convincing form that Prine was alive and well prior to and within two or three years of the second trial and before she filed her second suit, should we shut our eyes to these facts and still rule that plaintiff was entitled, under the evidence offered by her at the second trial, to indulgence of the presumption that Prine was dead, even if, prior to that time and for more than seven years, he had been absent and unaccounted for?

We do not find it necessary to put our decision on that ground, for we think plaintiff failed to make a sufficient showing that Prine had disappeared from Oklahoma or that, if absent therefrom, his whereabouts were unknown for seven years by those with whom he

there associated. Plaintiff's evidence also fails to show that Prine would likely have communicated with her even if alive and able to do so. In other words, Prine's absence from and failure to communicate with plaintiff may be accounted for on a very rational theory other than that of his death. [Biegler v. Supreme Council, supra.]

Plaintiff failed to make a case submissible to the jury upon her allegation that she was the sole surviving parent of William C. Prine, deceased, either under our statute or under the common law presumption of death. Such being our view of the insufficiency of the plaintiff's evidence, it becomes unnecessary to enter upon a consideration of defendants' contention that, even if plaintiff's evidence at the last trial had been sufficient to authorize indulgence of the presumption that Prine was dead at the commencement of this suit, such presumption was utterly destroyed by the uncontradicted proof made by defendants at that trial that Prine was living as late as the fall of 1924 and that, in the absence of actual proof by plaintiff by competent testimony that Prine was dead when the suit was commenced, defendants were entitled to a directed verdict. It will be time enough to consider and pass upon that question when the answer to it becomes necessary to the decision of the particular case. It is unnecessary to consider the supposed conflict of opinion on this subject which gave us appellate jurisdiction.

The requirement that both parents, if living, must join in the suit to recover damages for the wrongful death of an unmarried, minor child makes this a hard case. The language of the statute (Section 4217) is clear and has been uniformly construed to require joinder of both parents, if living. Clark v. Railroad Co., supra, was fully as hard and unfortunate a case as this. It was there pointed out that the only relief from the hardship of the statute was in the Legislature. So far it has not seen fit to authorize prosecution of such cases by one parent, where the requirement of joinder of the other living parent cannot be met.

The judgment of the trial court is reversed. However, in view of the possibility that the father of the deceased may have been located since the trial below, and, in that event, plaintiff should be given an opportunity to secure his joinder as a party plaintiff, if she can, the case is remanded to the circuit court for further proceedings not inconsistent with this opinion. All concur.