Hugh H. MAGERS, Trustee, Appellant,

v.

WESTERN AND SOUTHERN LIFE
INSURANCE COMPANY,
Respondent.

No. 23146.

Kansas City Court of Appeals.

Missouri.

May 9, 1960.

**356**

Southall & Southall, R. C. Southall, Kansas City, for appellant.

M. E. Benson, Kansas City, for respondent.

HUNTER, Presiding Judge.

This is an action by plaintiff-appellant, Hugh H. Magers, against defendant-respondent, Western And Southern Life Insurance Company, to collect $160 on a life insurance policy in which Ernestine Jackson Lucas was the designated beneficiary and Leon Fritz was the insured. The policy contained the promise to pay in the event of the death of the insured.

At the trial before the court it was plaintiff's contention that the insured had been continuously absent for seven years from his home with no tidings having been received from him and that under the common law rule he is presumed to be dead. After hearing the evidence adduced on plaintiff's behalf the trial judge rendered judgment for the defendant. Upon his motion for a new trial being overruled, plaintiff has appealed.

Plaintiff contends the trial court erred in failing to find on the evidence that plaintiff with the aid of the common law presumption had established the death of insured, and in failing to render judgment for plaintiff for the amount of the policy.

The evidence on plaintiff's behalf was brief. Ernestine Jackson Lucas testified that she and Leon Fritz had met "over in Kansas" but she didn't remember when. In 1942 he took out the insurance policy in question naming Ernestine Jackson, "Friend", as beneficiary. In June, 1943, they were married. On June 9, 1947, a son was born. Two months later, in August, 1947, while they were living in a three room apartment at 2011 East 11th Street, Kansas City, Missouri, her husband came home from work and said, "I'll see you after awhile." He had told her that morning that he had to go "some place" that evening. He never returned. He hadn't changed his clothes and didn't leave any money. He had no bank account that she knew of. He just took the car and left without saying when he would be back. She was upstairs when he left so she didn't know whether he left the house alone when he went for his car. They had not had any fuss or fight. She has never seen him or heard from him since. He had never left before. She didn't understand why he did at that time. She went to her Mother's home later that night.

Mrs. Lucas did not say when she commenced any search for Leon Fritz. She was asked: "Q. Did he have any family, or parents or brothers or sisters? A. He told me when I got married he didn't have any."

She didn't know where he had come from in Kansas. She didn't know his age. She didn't know of any relatives. She did make inquiry of

"Some people that knew him, I don't know them. * * * I would see him around with people, so I asked those people. * * * I never tried to find out their names because I never go around them, * * *.

"Q. How many of them? A. About three or four of them. * * * They told me they hadn't seen him.

"Q. And when was that? A. Oh, I don't remember when it was. * * *

"Q. Do you know where they lived. A. No. I don't.

"Q. Well, how did you go about trying to find these people? A. Well, I just seen those people on the street * * * and that was around the corner of 12th and Highland."

As to his employment, Mrs. Lucas testified Leon Fritz had worked at the Black and White Garage at 12th and Highland in partnership with a man by the name of Silas. She didn't know his last name. Some time after Mr. Fritz disappeared she wasn't sure when, she went to the garage "and asked them did they know where he was. Q. (Who)? A. Silas." She didn't say what answer Silas made.

Mrs. Lucas remained married to Mr. Fritz until 1954 when she obtained a divorce. She kept paying the insurance premiums until October 18, 1954, on the advice of her insurance man who told her Mr. Fritz "might accidentally come back." She has remarried.

She testified Leon Fritz owned a "Chevy" that bore a Missouri license. She thought it was titled in his name. She had not made any inquiry at Jefferson City concerning it or what happened to it.

The only other evidence on plaintiff's behalf was that of Hugh H. Magers concerning his having become "assignee and trustee" of Mrs. Lucas' claim and his having made demand on defendant for payment of the full amount of the policy which demand had been refused. The defendant offered no evidence.

At the close of the trial the court took the case under advisement to await briefs of counsel, and, after their receipt, entered judgment for defendant.

■ Since this is a jury waived case our duty is to review the case upon both the law and the evidence as in suits of an equitable nature. The judgment is not to be set aside unless clearly erroneous, and due regard is to be given to the opportunity of the trial court to judge the credibility of the witnesses. Section 510.310 RSMo 1949, V.A.M.S.

■■ In order to recover plaintiff has the burden of proving that the insured is dead. The fact of death, like any other fact, may be shown either by direct or by circumstantial evidence.

In the instant case plaintiff did not adduce any direct evidence of death but rather undertook to show facts entitling him to the benefit of the common law presumption to the effect that where a person has not been heard of for seven years by those who, were he living, would naturally hear from him, he will be presumed dead, unless the circumstances are such as to account for his absence and silence without assuming his death. See, Cobble v. Royal Neighbors of America, En Banc, 291 Mo. 125, 236 S.W. 306, 21 A.L.R. 1346.

■ The common law presumption of death is a rebuttable one but ordinarily where all of the facts necessary to entitle one to the presumption are in evidence and are not controverted or rebutted the presumption is deemed to be conclusive. See, Annotation, Presumption of Death as Evidence, 115 A.L.R. 404; Bradley v. Modern Woodmen of America, 146 Mo.App. 428, 124 S.W. 69, 74; 2 Appleman, Insurance Law and Practice, Section 722, page 28; 25 C.J.S. Death § 7, p. 1063. It is plaintiff's claim that he had adduced facts entitling him to the benefit of the presumption, and since defendant had not offered any evidence in rebuttal, or otherwise, under the law the trial court should have and this court on appeal must find in his favor.

However, defendant contends plaintiff failed to adduce evidence entitling him to the benefit of the presumption in that he failed to show that there had been a reasonable and timely search made for the insured.

■ It is the rule in the majority of jurisdictions, including Missouri, that before the common law presumption of death resulting from seven years unexplained absence will be permitted, there must be a showing of diligent search made, by the beneficiary or some other person, at his last known place of residence and among those persons who would be likely to hear

from the insured, if living. These jurisdictions deem a reasonable search and inquiry to be indispensable elements of the presumption rule. See, 2 Appleman, Insurance Law and Practice, Section 721, pages 23 ff.

In 25 C.J.S. Death § 6(d), pp. 1059–1060, in speaking of those jurisdictions requiring search it is said, "Such search and inquiry is required as a reasonably prudent person would make in view of the circumstances. Thus, where the circumstances permit of an explanation other than death for absence and failure to communicate, a more thorough search must be made. The inquiry must be such as exhausts all sources of information which the circumstances suggest; it should extend to all the places where information is likely to be obtained and to all persons, including friends and relatives, who in the ordinary course of events would be likely to receive tidings of the absent person, and to the places where he last resided and where he is last known to have been alive."

In 16 Am.Jur., Death, Section 33, pages 28–29, it is expressed, " * * * The generally accepted rule is that to raise a presumption or a prima facie case of death from seven years' absence, it must appear that diligent search and inquiry have been made, without result, to ascertain the whereabouts of the missing person. It is accordingly sometimes stated that the presumption of death arises from the required absence and 'undiscoverable' or 'unascertainable' whereabouts of the absentee. The inquiry should embrace all reasonably patent sources of information which the circumstances of the case suggest, including an inquiry made of the persons and at the places where news of him, if living, would most probably be had. However, the places, person(s) and sources of information required are only those which a reasonably prudent person under the same or similar circumstances would deem to be sufficient."

In Heath v. Salisbury Home Telephone Co., 326 Mo. 875, 33 S.W.2d 118, in holding that the evidence was insufficient to authorize the common law presumption of death, our Supreme Court stated that the character of proof required to authorize indulgence by a jury of the common law presumption of death is ably and clearly set out in the following from Biegler v. Supreme Council of American Legion of Honor, 57 Mo.App. 419, loc. cit. 423: "Where, however, as in the case at bar, there is a disappearance and silence for seven years, under circumstances from which no reasonable mind could draw the inference that the absence was voluntary; where the absence is wholly unexplained and unaccounted for on any rational theory save that of death; where a man of industrious habits, and attached to his family, leaves it without any provocation, and never communicates with them thereafter; *where reasonable search is made immediately after the disappearance, and is kept up for some time without furnishing any clew whatever*; where, in fine, all these things concur, the court is justified in instructing the jury that, upon a finding of these facts, they may presume the absentee to be dead after an expiration of seven years." (Emphasis ours.)

In their briefs and argument before this court counsel for both sides addressed themselves primarily to the question of the search made. Appellant's counsel frankly acknowledged that if there was a weakness in plaintiff's case it involved that subject. Thus, our question is, did plaintiff adduce evidence to satisfy the requirement that a reasonable search under the circumstances was made.

Essentially all Mrs. Lucas did, according to her own evidence, by way of making any search was (1) at an unstated time and apparently on a single occasion to inquire of three or four people on the street whose names or addresses she did not know but who had some acquaintance, possibly entirely casual, with her husband as to whether they had heard from him; and (2) again at an unstated time to go to

the garage where her husband had worked and inquire about him from "Silas" whose last name she did not know, and whose answer she did not give.

Apparently the trial court considered this to be an insufficient search. On our own independent review of this uncontroverted evidence we are of the same opinion. The evidence wholly fails to disclose a diligent search, reasonable under all of the circumstances. The trial court did not err in rendering judgment on this evidence for the defendant, and on our review of the evidence our finding is also for the defendant.

█ It may be helpful to mention an additional requirement of the common law rule. That is, to establish the presumption of death it is essential to make a reasonable showing of the circumstances surrounding the disapperance in order to show that the absence is unexplained and unaccounted for on any rational theory save that of death. For it is necessary that the disappearance must have occured under circumstances not warranting a reasonable inference of voluntary absence by the missing person as, for instance, intentional

abandonment of his home. In making a showing of the circumstances surrounding the disappearance of a husband it is customary to include some evidence of such items as the character, health, habits, conditions, affections, attachments and objects in life of the absentee which usually control the conduct of such men and are the motives for their actions, and in view of which no reasonable explanation can be given for the absence other than the rational theory of death.[1]

In the instant case the evidence showing the circumstances surrounding the disappearance was sketchy and left much to be desired. Even such an important thing as the state of affection between the parties rested only on whatever inference could be drawn from Mrs. Lucas' testimony that they had had no fuss or fight and that she didn't understand why he left.

However, we have placed our finding for defendant on the failure of the plaintiff to make the necessary showing of a reasonable search.

The judgment is affirmed.

All concur.

1. Compare, Donea v. Massachusetts Mut. Life Ins. Co., 220 Minn. 204, 19 N.W.2d 377; Allen v. Protected Home Circle, 112 Kan. 576, 212 P. 95; Ligon v. Metropolitan Life Ins. Co., 219 S.C. 143, 64 S.E.2d 258, 26 A.L.R.2d 1064; Browne v. New York Life Ins. Co., 8 Cir., 57 F.2d 62.